**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

VICTORIA THOMPSON,

Plaintiff,

v.

Case No. ___________________

Hon.______________________

CITY OF INKSTER;
MEHDI AYOUB;
CHARLES WASHKO;
TERRANCE MILES;
and JOURDAIN DUKES,

Defendants.

---

**Marc J. Mendelson (P52798)**
**Jake K. Yeater (P72741)**
**Madeline M. Sinkovich (P82846)**
MIKE MORSE LAW FIRM
24901 Northwestern Highway, Suite 700
Southfield, MI 48075
(248) 350-9050
madeline.sinkovich@855mikewins.com
Attorneys for Plaintiff

---

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, Victoria Thompson, by and through her attorneys, the Mike Morse Law Firm, and for her Complaint against the above-named Defendants, states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343 over Plaintiff's claims under 42 U.S.C. § 1983, and supplemental jurisdiction under 28 U.S.C. § 1367 over her state law claims.

2. Venue is proper under 28 U.S.C. § 1391(b)(2) because the events occurred in Inkster, Wayne County, Michigan, within this District.

## PARTIES

3. Plaintiff Victoria Thompson resides in Inkster, Michigan. At the time of the incident, she resided at 4543 Moore Avenue.

4. Defendant City of Inkster is a Michigan municipal corporation that operates the Inkster Police Department.

5. Defendant Mehdi Ayoub, badge number 150, was an Inkster police officer acting under the color of law and is being sued in his individual capacity.

6. Defendant Charles Washko, badge number 157, was an Inkster police officer acting under the color of law and is being sued in his individual capacity.

7. Defendant Terrance Miles was an Inkster police officer acting under the color of law and is being sued in his individual capacity.

8. Defendant Jourdain Dukes was an Inkster police sergeant and acting under the color of law and is being sued in his individual capacity.

9. When referred to jointly, the individually named Defendants will be called "Defendant Officers."

## FACTUAL ALLEGATIONS

10. On October 5, 2025, two people attempted to break into the family's Kia Soul outside Plaintiff's home.

11. Plaintiff's partner, Cal Bernard Daniel, called police for help and shot a warning shot with his personal firearm to try to protect his family.

12. Defendants Ayoub and Washko responded to the call for help. Plaintiff and the couple's children, ages seven and ten, were outside and at the vehicle.

13. Plaintiff and her family were intending to leave the home out of fear of further criminal activity.

14. Instead of investigating the attempted break-in, Defendants detained Mr. Daniel for the warning shot.

15. While officers detained Daniel, Plaintiff openly recorded their interaction from in front of the Kia, where one of Defendant Officers had expressly and specifically permitted her to stand and record with her cell phone.

16. Plaintiff remained in the permitted location. She did not physically obstruct or threaten anyone, discharge a firearm, or attempt to access one.

17. Despite lawfully recording the Defendant Officers, Defendant Miles seized Plaintiff's arms and forcibly raised them behind her back toward her head, nearly lifting her off the ground and causing immediate pain.

18. Defendant Miles knocked Plaintiff's phone from her hand and threw it to the ground, stopping her recording.

19. Defendant Miles handcuffed Plaintiff behind her back and confined her in his patrol vehicle. Plaintiff did not consent and was not free to leave.

20. The cuffs caused severe pain and numbness. Plaintiff told Defendant Miles that the cuffs were too tight, she could not feel her hands, and her arm felt as though it was breaking. Miles refused her request to loosen them.

21. Defendant Washko demanded Plaintiff's identification and threatened to contact Child Protective Services and have her children taken away during the detention.

22. Defendant Dukes was present at the scene as a supervisor and told Plaintiff she was being detained for not listening. However, Dukes knew that Plaintiff was lawfully recording Defendant Officers and had not done anything unlawful.

23. Plaintiff's confinement continued while Defendant Officers discussed the reason for her detention, demanded identification, and threatened removal of her children.

24. One of the Defendant Officers took Plaintiff's purse, emptied its contents onto a vehicle, and searched them without a warrant, her consent, or any lawful basis.

25. Plaintiff's children witnessed her restraint and detention from the Kia. Plaintiff suffered fear, humiliation, and distress from the encounter and the threats to remove her children.

26. Plaintiff developed pain, swelling, and numbness. She sought urgent care on October 8, 2025, and was diagnosed with right shoulder and wrist sprains.

27. Plaintiff's injuries required continued treatment, including a right-arm surgery on August 3, 2026, and physical therapy.

28. Plaintiff continues to suffer pain, limited use of her dominant right arm, anxiety, depression, and symptoms of post-traumatic stress.

29. The City, through the officials responsible for police administration, controlled officer training, supervision, use-of-force review, and corrective practices.

30. Before October 5, 2025, the City had been named in lawsuits alleging excessive force during arrests and detentions and had notice of other publicly documented force incidents involving its officers.

31. The prior reported conduct included beating or choking a person after handcuffing, violently taking a handcuffed person to the ground despite alleged compliance, and repeatedly striking a person in the head during an arrest.

32. The City publicly acknowledged departmental culture and attitude problems and announced changes to training and internal-affairs procedures. A later lawsuit again alleged disproportionate force against a handcuffed person who was not actively resisting.

33. On information and belief, before Plaintiff's encounter, the City maintained a custom of tolerating injurious force to compel perceived compliance, including force against restrained or nonthreatening people.

34. On information and belief, the City's supervisory and force-review practices accepted officers' assertions of resistance or noncompliance without adequately examining the person's actual conduct or the necessity of the force used, and failed to correct recurring disproportionate force.

35. On information and belief, the City's training and corrective instruction inadequately addressed the distinction between verbal / nonverbal protest and physical resistance, the limits on arm-control and restraint techniques, and the need to reassess restraints after complaints of severe pain or numbness.

**COUNT I**
**EXCESSIVE FORCE UNDER 42 U.S.C. § 1983**
**Against Defendant Terrance Miles**

36. Plaintiff incorporates paragraphs 1 through 35.

37. Defendant Miles used objectively unreasonable force by wrenching Plaintiff's arms upward behind her back and nearly lifting her off the ground while she was recording without physical interference or any unlawful or threatening conduct.

38. Miles also applied injuriously tight handcuffs and continued that restraint after Plaintiff expressly reported severe pain and numbness and requested relief.

39. The arm manipulation and continued painful restraint violated Plaintiff's clearly established Fourth Amendment right to be free from gratuitous force and injurious handcuffing under these circumstances.

40. Miles's conduct caused Plaintiff's shoulder, arm, and wrist injuries, medical treatment and surgery, pain, disability, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Terrance Miles for compensatory and punitive damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

## COUNT II
## UNLAWFUL SEIZURE UNDER 42 U.S.C. § 1983
## Against Defendant Terrance Miles

41. Plaintiff incorporates paragraphs 1 through 40.

42. Defendant Miles seized and confined Plaintiff.

43. Plaintiff was recording from a permitted location without physical interference or threatening conduct. Her conduct supplied neither probable cause to arrest her nor individualized reasonable suspicion to detain her.

44. The handcuffing and confinement constituted an arrest without probable cause.

45. Alternatively, the seizure was an unlawful investigative detention because it lacked reasonable suspicion and its use of force, handcuffs, and continued confinement exceeded any objectively reasonable safety or investigative need.

46. Defendant's conduct violated Plaintiff's clearly established Fourth Amendment rights and caused her loss of liberty, physical injury, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Terrance Miles for compensatory and punitive damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

## COUNT III
## FIRST AMENDMENT RETALIATION UNDER 42 U.S.C. § 1983
## Against Defendants Terrance Miles and Charles Washko

47. Plaintiff incorporates paragraphs 1 through 46.

48. Plaintiff engaged in protected expression and information gathering by openly recording officers performing their duties outside her home without physical interference.

49. Defendants Miles and Washko could see that she was recording and not committing any crime or interfering with Defendant Officers' investigation.

50. Defendant Miles stopped the recording by knocking away Plaintiff's phone, throwing it to the ground, and forcibly restraining and confining her.

51. Defendant Washko threatened removal of her children during that encounter.

52. Those actions would deter a person of ordinary firmness from recording or questioning police.

53. Defendant Miles's conduct actually prevented Plaintiff from continuing to record.

54. Plaintiff's recording was a substantial and motivating factor in Miles's and Washko's conduct. Their challenged conduct would not have occurred but for her recording.

55. There was no probable cause to arrest Plaintiff. Miles's interference with her phone and Washko's threats also constituted adverse actions distinct from her confinement.

56. Each defendant's retaliatory conduct caused Plaintiff's loss of liberty, physical injury, fear, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Terrance Miles and Defendant Charles Washko for compensatory and punitive damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

## COUNT IV
## UNREASONABLE SEARCH AND SEIZURE UNDER 42 U.S.C. § 1983
## Against All Defendant Officers

57. Plaintiff incorporates paragraphs 1 through 56.

58. Defendant Miles intentionally interfered with Plaintiff's possession and use of her phone by knocking it away and throwing it to the ground to stop her recording. Her recording presented no physical threat or obstruction justifying that interference.

59. Defendant Officers took and searched Plaintiff's purse without a warrant or consent. The search was not incident to a lawful arrest and exceeded any limited inspection supported by an individualized safety concern. No warrant exception justified the search as conducted.

60. Plaintiff had a possessory interest in her phone and purse and a reasonable expectation of privacy in the contents of her purse.

61. Each defendant's own conduct violated Plaintiff's clearly established Fourth Amendment rights.

62. The challenged conduct caused loss of possession or use, invasion of privacy, humiliation, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against all Defendant Officers for compensatory and punitive damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

**COUNT V**
**FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983**
**Against Defendants Mehdi Ayoub, Charles Washko, and Jourdain Dukes**

63. Plaintiff incorporates paragraphs 1 through 62.

64. Defendants Ayoub and Washko knew Plaintiff had been permitted to stand in front of the Kia and record. Defendant Officers observed her remain there without physically interfering or threatening anyone. Despite knowing her conduct supplied no lawful basis for detention and having an opportunity to intervene, Defendants Ayoub and Washko allowed her unlawful confinement to continue.

65. Defendant Washko confronted Plaintiff during the detention, demanded identification, and threatened removal of her children. Washko knew she was being

confined for the stated noncompliance rationale while recording without physical interference and had an opportunity to end that confinement.

66. Upon information and belief, Defendant Dukes was informed of the circumstances and the stated reason for Plaintiff's detention, observed her unlawful confinement, and had an opportunity as the on-scene supervisor to direct her release.

67. Each defendant had reason to know Plaintiff's detention lacked a lawful basis and had a realistic opportunity to intervene while the confinement and discussions continued. Each failed to take available action to end it.

68. The duty to intervene to prevent an arrest without probable cause, or detention without reasonable suspicion, was clearly established before October 5, 2025. Each defendant's own failure to intervene violated Plaintiff's clearly established Fourth Amendment rights.

69. The failures caused Plaintiff's confinement to continue and resulted in additional loss of liberty, fear, humiliation, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendants Mehdi Ayoub, Charles Washko, and Jourdain Dukes for compensatory and punitive damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

## COUNT VI
## MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
## Against the City of Inkster

70. Plaintiff incorporates paragraphs 1 through 69.

71. On information and belief, before October 5, 2025, the City maintained a custom of tolerating force disproportionate to a person's actual threat or resistance, including injurious force against restrained or nonthreatening people to compel perceived compliance.

72. The custom operated through supervisory and force-review practices that accepted officers' assertions of resistance or noncompliance without adequately examining whether the person's actual conduct justified the force used, and without effective correction of recurring disproportionate force.

73. The City had actual or constructive notice of the recurring danger through the prior reported force incidents, litigation, and its own acknowledgment of departmental problems alleged above. Its continued tolerance of the identified practice despite that notice constituted deliberate indifference to the predictable risk of further excessive force.

74. The City also failed to adequately train and supervise officers concerning the distinction between verbal / non-verbal protest and physical resistance, the limits on arm-control and restraint techniques, and the need to reassess restraints after complaints of severe pain or numbness.

75. The prior reported incidents involving force during arrest and restraint put the City on notice of the need for effective corrective instruction and supervision. Its continued failure to address the identified deficiencies reflected deliberate indifference to the risk of further disproportionate force.

76. The City's custom was a moving force behind Plaintiff's injuries. Miles used injurious force against a nonthreatening person recording without physical interference during an encounter in which officers justified her detention as being in the way or not listening. The City's tolerance of disproportionate force to compel perceived compliance caused the unnecessary arm manipulation and restraint.

77. The training and supervisory deficiencies were also closely related to Plaintiff's injuries. The failure to enforce the identified limits on force and restraints resulted in unnecessary arm manipulation and the continuation of painful handcuffing after Plaintiff reported severe pain and numbness and requested relief.

78. The City's custom and deliberately indifferent training and supervision caused the violation of Plaintiff's Fourth Amendment rights and her resulting shoulder, arm, and wrist injuries, medical treatment and surgery, pain, disability, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant City of Inkster for compensatory damages in an amount to be determined

at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

**COUNT VII**
**FALSE ARREST AND FALSE IMPRISONMENT**
**Against Terrance Miles**

79. Plaintiff incorporates paragraphs 1 through 78.

80. Defendant Miles intentionally confined Plaintiff through handcuffs and placement in his patrol vehicle without a lawful basis.

81. Plaintiff knew she was confined and did not consent.

82. The confinement lacked probable cause or another lawful justification under Michigan law.

83. On information and belief, Miles acted in bad faith to suppress or punish Plaintiff's recording rather than to address criminal conduct by her. His interference with her phone and confinement of a non-obstructing recorder support that inference.

84. Miles's conduct caused Plaintiff's loss of liberty, fear, humiliation, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Terrance Miles for compensatory and exemplary damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

**COUNT VIII**
**ASSAULT AND BATTERY**
**Against Terrance Miles**

85. Plaintiff incorporates paragraphs 1 through 84.

86. Defendant Miles intentionally subjected Plaintiff to harmful and offensive contact by wrenching her arms upward behind her back, nearly lifting her, and applying injuriously tight handcuffs. The contact exceeded any lawful privilege to use reasonable force.

87. Miles's continuing manipulation and restraint also caused Plaintiff reasonably to apprehend further immediate harmful contact.

88. Miles acted in bad faith, with malice or wanton disregard for Plaintiff's safety, as shown by his interference with her recording, unnecessary arm manipulation, and, on information and belief, refusal to relieve the cuffs after her express complaints.

89. Miles's conduct caused Plaintiff's physical injuries, medical treatment and surgery, pain, disability, emotional distress, and other compensable harm.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Terrance Miles for compensatory and exemplary damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

**COUNT IX**
**GROSS NEGLIGENCE**
**Against Terrance Miles**

90. Plaintiff incorporates paragraphs 1 through 89 and pleads this count in the alternative.

91. Having restrained Plaintiff and confined her in his patrol vehicle, Miles owed her a duty to exercise reasonable care for her physical safety while maintaining those restraints, including reasonably responding to complaints indicating that the restraints were causing injury.

92. Plaintiff expressly complained that the handcuffs were too tight, she could not feel her hands, and her arm felt as though it was breaking. On information and belief, Miles received those complaints and refused her request to loosen the cuffs.

93. Despite those specific warnings, Miles failed to relieve the dangerous restraint and left Plaintiff confined with her hands cuffed behind her back. Plaintiff's restraint and confinement prevented her from adjusting the cuffs or otherwise protecting herself from the resulting injury.

94. Miles's failure to take corrective measures after receiving notice of severe pain and loss of sensation demonstrated a substantial lack of concern for whether injury would result and constituted gross negligence under MCL 691.1407(8)(a).

95. Miles's grossly negligent failure to relieve the restraint was the proximate cause of physical injury and aggravation of Plaintiff's shoulder, arm, and wrist injuries, resulting in pain, disability, medical expenses, emotional distress, and other compensable harm.

96. Because Miles's conduct amounted to gross negligence that was the proximate cause of Plaintiff's injuries, governmental immunity does not bar this claim under MCL 691.1407(2).

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant Terrance Miles for compensatory and exemplary damages in an amount to be determined at trial, plus interest, costs, reasonable attorney fees, and such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully submitted,

**MIKE MORSE LAW FIRM, PLLC**

*/s/Madeline M. Sinkovich*______
Madeline M. Sinkovich P-82846
24901 Northwestern Highway, Suite 700
Southfield, MI 48075-1816
(248) 350-9050
Madeline.sinkovich@855mikewins.com

Dated: November 17, 2026